UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARREN LEE SIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:15-cv-00469-SEB-DML |
| ) | |
| BINGHAM FARRER & WILSON, P.C., ) | |
| *et al.* ) | |
| Defendants. ) | |

**ORDER GRANTING SUMMARY JUDGMENT
ON COUNT 2 OF THE COMPLAINT**

Defendants Bingham, Farrer & Wilson, P.C. ("BFW") and Edward B. Hopper, II ("Hopper") (collectively "Defendants") seek summary judgment as to Count 2 of Plaintiff Darren Lee Simmons's ("Simmons") Complaint. For the reasons explained below, we GRANT summary judgment in Defendants' favor, DISMISS Count 2 (which is the only basis for federal jurisdiction in this cause), and DISMISS Count 1, the legal malpractice claim, without prejudice, to permit its transfer or refiling in the Marion Superior Court.

This lawsuit is an outgrowth of Simmons's personal bankruptcy case, filed by Defendants on his behalf pursuant to Chapter 7 of the Bankruptcy Code. Defendants were retained as his attorneys to represent Simmons in that litigation. Simmons's discharge in bankruptcy was ultimately denied by the Bankruptcy Court, which adverse ruling concluded an adversary proceeding that had been brought against Simmons by his

1

Bank. The denial of discharge was affirmed on appeal by the District Court in the Northern District of Indiana.

Simmons claims that the denial of his Chapter 7 discharge resulted from various errors and omissions committed by Defendants in the preparation and filing of his bankruptcy petition. He challenges these alleged failures by his attorneys under 11 U.S.C. § 526 (2010) and 11 U.S.C. § 527 (2010) of the BAPCPA. This claim provides the Court with federal question jurisdiction. See 28 U.S.C. § 1331. Simmons also asserts, in Count One of his Complaint, a supplemental state law legal malpractice claim against Defendants.

We need not discuss in detail the specific facts underlying the legal malpractice allegations, since the focus of the pending summary judgment motion is on the two statutory provisions relied upon by Simmons as the basis for Count 2 of the Complaint. Simmons has alleged that "[d]uring the course of the Defendants' representation of [him], the Defendants were acting as a 'debt relief agency' as that term is defined by 11 U.S.C. § 101 (12A)" and, "[b]y intentionally and/or negligently disregarding the material requirements of Title 11 and/or the Federal Rules of Bankruptcy Procedure, Defendants violated the requirements of 11 U.S.C. §§ 526 and 527 …". (Compl. at ¶¶ 87, 88).

Title 11 U.S.C. § 526 provides in relevant part as follows:

> **(a)** A debt relief agency shall not—
>
> > **(1)** fail to perform any service that such agency informed an assisted person or prospective assisted person it would

2

> provide in connection with a case or proceeding under this title;
>
> **(2)** make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;
>
> **(3)** misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—
>
>> **(A)** the services that such agency will provide to such person; or
>>
>> **(B)** the benefits and risks that may result if such person becomes a debtor in a case under this title; or
>
> **(4)** advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526 (2010).

Title 11 U.S.C. § 527 provides in relevant part as follows:

> **(a)** A debt relief agency providing bankruptcy assistance to an assisted person shall provide—
>
> **(1)** the written notice required under section 342(b)(1); and
>
> **(2)** to the extent not covered in the written notice described in paragraph (1), and not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an

3

> assisted person, a clear and conspicuous written notice advising assisted persons that [of various matters].
>
> . . .
>
> **(b)** A debt relief agency providing bankruptcy assistance to an assisted person shall provide each assisted person at the same time as the notices required under subsection (a)(1) the following statement, to the extent applicable, or one substantially similar…
>
> **(c)** Except to the extent the debt relief agency provides the required information itself after reasonably diligent inquiry of the assisted person or others so as to obtain such information reasonably accurately for inclusion on the petition, schedules or statement of financial affairs, a debt relief agency providing bankruptcy assistance to an assisted person, to the extent permitted by nonbankruptcy law, shall provide each assisted person at the time required for the notice required under subsection (a)(1) reasonably sufficient information (which shall be provided in a clear and conspicuous writing) to the assisted person on how to provide all the information the assisted person is required to provide under this title pursuant to section 521…

11 U.S.C. § 527 (2010).

A "debt relief agency" as defined in 11 U.S.C. § 101(12A) is:

> any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110, but does not include—
>
> > **(A)** any person who is an officer, director, employee, or agent of a person who provides such assistance or of the bankruptcy petition preparer;
> >
> > **(B)** a nonprofit organization that is exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986;

4

>>(C) a creditor of such assisted person, to the extent that the creditor is assisting such assisted person to restructure any debt owed by such assisted person to the creditor;
>
>>(D) a depository institution (as defined in section 3 of the Federal Deposit Insurance Act) or any Federal credit union or State credit union (as those terms are defined in section 101 of the Federal Credit Union Act), or any affiliate or subsidiary of such depository institution or credit union; or
>
>>(E) an author, publisher, distributor, or seller of works subject to copyright protection under title 17, when acting in such capacity.

11 U.S.C. § 101 (12A).

Under certain circumstances, the definition of "debt relief agency" has been construed to apply to attorneys. Defendants are not disputing, for purposes of this motion, that this definition of debt relief agency includes them. *See Milavetz, Gallop & Milavetz, P.A. v. U.S.,* 559 U.S. 229, 229 (2010).

The protections of 11 U.S.C. §§ 526 and 527 extend only to "assisted persons," according to the express terms of 11 U.S.C. § 101(3). An "assisted person" is a person: (1) whose debts are primarily consumer debts, and (2) "the value of whose nonexempt property is less than $186,825." [1] Simmons claims that he qualifies as an "assisted person" under these statutes because his debts were consumer debts and the value of his

---

[1] This ceiling was reflected as a lesser amount at the time Simmons filed his petition: 11 U.S.C. § 101(3) required that a person could qualify as an "assisted person" only if his nonexempt property was valued below $175,750. 78 Fed. Reg. 12089 (Feb. 21, 2013).

5

nonexempt property was less than $186,825. Defendants dispute both of these claims, arguing that Simmons's debts were not primarily consumer debts and that the value of Simmons's nonexempt property exceeded $186,825, which disqualifies him from being deemed an "assisted person."

The Court's determination of whether a debtor is an "assisted person" tracks these two statutory requirements and thus entails a two-step inquiry: first, the court must determine whether the debtor's debts were "primarily … consumer debts"; and, second, whether the value of the debtor's nonexempt property was less than $186,825. A debtor must meet both of these criteria to qualify as an "assisted person."

### I.     Primarily Consumer Debts

Defendants contend that Simmons's debts did not consist of "primarily … consumer debts" because more than half of his debts consisted of a combination of court-ordered marital property divisions and debts related to unpaid taxes and to rent. The nature of these debts does not make them consumer debts, which term, under the Bankruptcy Code, is defined a "debt incurred by an individual for a person, family, or household purpose." 11 U.S.C. § 101(8). Personal tax liability is generally not considered a "consumer debt." *See In re Peterson*, 524 B.R. 808 (S.D. Ind. Bankr. 2015). Nor are investments in "profit-motive" real estate regarded as a "consumer debt". *In re Pedigo*, 296 B.R. 485, 490 (S.D. Ind. Bankr. 2003), *rev'd on other grounds*, 329 B.R. (S.D. Ind. 2005). In *Peterson*, the court construed the term "consumer debt" in reference to 11 U.S.C. § 101(8) as debts incurred voluntarily (as opposed to involuntary debts

arising from voluntary acts) and debts that a "debtor would ordinarily expect to incur in his daily affairs other than business debts." *Id.* at 812.

Defendants describe Simmons's debts as a hybrid form of debt that is neither business debt nor consumer debt. Of the $1,272,691.95 of debt for which Simmons sought bankruptcy protection on his Schedules D-F, $360,000 was the amount of combined debt to the Internal Revenue Service and the Indiana Department of Revenue for withholding taxes, the additional amount of $399,754 was payable to Michelle Simmons based on the divorce decree between her and Mr. Simmons, and another $44,055 of debt arose from a note relating to rental property. Defendants contend that neither the tax debt, nor the money owed to Michelle, nor the debt connected to Simmons's rental property, incident to a mortgage thereon and thus a source of revenue incurred with a profit motive, are entitled to be construed as "consumer debt."

Simmons's primary response to Defendants' argument is an invocation of estoppel principles. He states that Defendants had included in the original Chapter 7 bankruptcy petition a description of his debts as "primarily consumer debts as defined in 11 U.S.C. [§] 101(8) as 'incurred primarily for personal, family or household purposes.'" (Petition at 1). Having so characterized his debt, he argues that Defendants are estopped from now contending otherwise in their summary judgment motion. [2] No legal authority is cited

---

[2] Simmons also contends that Defendants, in challenging his entitlement to relief under the federal bankruptcy statutes as framed in Count 2, have placed the Court's federal question jurisdiction in issue such that summary judgment is unavailable or inappropriate. "Plaintiff submits the proper inquiry is not whether (Defendants) were correct at the time of filing or not…, but whether (Defendants) acted in such a way as to invoke 11 U.S.C. §§ 526 and 527." Simmons believes that factual issues regarding our subject

by Simmons supporting the applicability of estoppel principles in this situation. Even if there were such authority which would have the effect of binding Defendants to something included in the original petition, that would not take Simmons very far down the road. The critical fact is that nowhere does the term "assisted person" appear in either the petition or with regard to the means test. Assuming the references included in the means test and petition refer to "consumer debts" and assuming those references are controlling in terms of this summary judgment, only one of the two required elements has been satisfied under the "assisted person" definition. 11 U.S.C. §101(3). (Plaintiff's estoppel argument also ignores the exempted asset ceiling determination essential to the "assisted person" definition.)

Simmons gives short shrift to Defendants' contention that over half of his debts consisted of a combination of court-ordered marital property division and unpaid taxes and debt connected to his rental property, and, as such, are not "consumer debts." The Indiana Bankruptcy Court in *Peterson*, *supra*, laid out a detailed and admittedly confusing and difficult to apply two-step analysis for determining the nature of bankruptcy debts, based on a distinction between and among non-consumer, non-business, and consumer debt. The parties' discussions of this holding in their briefs focus

---

matter jurisdiction are intertwined with the legal merits of Count 2, thereby necessitating a jury trial. We do not agree. Defendants challenge Simmons's compliance with the statutory basis for Count 2 of the Complaint. If Count 2, upon which original federal jurisdiction is based, is unsustainable as a matter of law, the court has discretion to dismiss Plaintiff's remaining state law claim in Count 1 without prejudice. In any event, we find no material facts in controversy that would foreclose a ruling on summary judgment as to Count 2.

almost entirely on whether Simmons's debt, which was incurred as a result of his marriage dissolution decree, is or is not a "consumer debt." We hold that *Peterson* provides reliable guidance here, resulting in a finding that of the total $1,272,691.95 in debts for which Simmons sought bankruptcy protection, three of the subparts of that total—the tax debt ($360,000), the money owed to Simmons's former wife ($399,754) based on the dissolution decree, and the debt related to the note on his rental property ($44,055)—are all outside the category of "consumer debt" and together total $803, 809 which is 63% of Simmons's total debt. Schedules D-F. Based on these findings and calculations, we find that well over fifty percent of Simmons's debt consists of non-consumer debt, which disqualifies him from being classified as an "assisted person" and entitled to relief under 11 U.S.C. §§ 526 and 527.

## II.     Value of Debtor's Non-Exempt Property

To qualify as an "assisted person" and thus be entitled to the protections afforded under 11 U.S.C. §§ 526 and 527, the value of the debtor's nonexempt property must also be less than $186,825 (or $175,750). Defendants claim that the value of Simmons's nonexempt property (his residence) at the time of the filing of his bankruptcy was $420,000, well in excess of the statutory maximum of $175,750. Simmons disputes this value, claiming that the extrapolated amount is based on reliance on incorrect schedules, but more significantly that it fails to take into account the secured claims that were asserted against that property.

9

Simmons contends that the property in question (his residence) was encumbered by secured liens that exceeded the scheduled value, and that a proper valuation would reflect only the unencumbered amount, that is to say, the claims of the secured creditors should be deducted from the overall value of the residence.  Had that deduction occurred here, Simmons argues, the actual amount of his interest in the residential property would be reduced to zero.  Simmons further argues that unless consideration is given in this way to the liens against the debtor's property in determining the overall value of that property, significant inequitable consequences will flow to the debtor.  He also asserts that exemptions are not to be applied against the value of the property, but against the value of the debtor's interest in the property.  This is an interesting and novel theory, but it has no basis in law.

To suggest that the proper approach for determining the value of his nonexempt property requires subtraction of the amount of his secured debts from the value of his residential property advances a method that lacks both a legal and logical foundation. The words, "value of nonexempt property" as used in these statutes and elsewhere in bankruptcy or commercial law do not support the construction given to them by Plaintiff. Simmons's version, were it to prevail, would be tantamount to an amendment of the statute, transforming "value of nonexempt property" into "value of the equity in nonexempt property." He argues that he qualifies as an "assisted person" because the value of his property should take into account the extent to which it is encumbered by secured liens (mortgages and a home equity line) that exceed its schedule value.  As

Defendants succinctly put is in their reply brief: "Implicit in Simmons's Response is his recognition that, if nonexempt property is determined by simply subtracting his exemptions from the total value of his bankruptcy estate, then he exceeds the ceiling to be an 'assisted person.'" Defs.' Reply at 5. This approach clearly does not reflect either the express provision in the applicable statutes or a fair extrapolation of them.

## Conclusion

For the foregoing reasons, summary judgment for Defendants is hereby ENTERED on Count 2. Since this claim provides the sole basis for federal jurisdiction, the claim in Count 1, Plaintiff's state law claim, is also DISMISSED but WITHOUT PREJUDICE to allow for its refiling in state court, should Plaintiff choose to do so. Final Judgment shall enter accordingly.

IT IS SO ORDERED.

Date: 9/26/2016

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Paul L. Jefferson
MCNEELY STEPHENSON
Paul.L.Jefferson@msth.com

Caroline E. Richardson
MCNEELY STEPHENSON
Caroline.E.Richardson@msth.com

Briane M. House
SKILES DETRUDE
bhouse@skilesdetrude.com